ZLOTNICK, TRUSTEE IN BANKRUPTCY FOR CAMPBELL CONSTRUCTION, INC., APPELLEE, *v.* CORTLAND SAVINGS & BANKING CO., APPELLANT, ET AL.; HOHMAN ET AL., DEFENDANTS.

(No. 81 C.A. 20 — Decided January 25, 1982.)

*Mr. Frederick S. Coombs, III,* and *Mr. Phillip A. Millstone,* for plaintiff-appellee Julius A. Zlotnick.

*Mr. James E. Hoffman, Jr.,* for defendant-appellant Cortland Savings & Banking Co.

*Mr. Solomon Malkoff* and *Mr. George E. Gessner,* for defendants Robert J. and Mary Lou Hohman.

O'NEILL, J. Robert J. Hohman had been for a period of time, prior to 1972, an employee of Campbell Construction, Inc. (Campbell). Campbell was a wholly owned subsidiary of Joseph Bucheit and Sons Company. On May 15, 1972, Joseph Bucheit and Sons Company issued a letter of intent to Robert Hohman setting forth an offer to sell Campbell to Mr. Hohman. The terms of the sale were:

1. Agree to pay at signing, $20,000 for the good name.

2. The purchase price to be book value as of close of business December 31, 1971.

3. The jobs under construction before 1972, profits before taxes, to be property of Bucheit.

4. Projects contracted for in 1972, profits before taxes to be:

Sixty percent — Bucheit

Forty percent — Hohman et al.

5. Only equipment or any part so listed on statement can be purchased at the book value cost.

6. Agreement to be concluded by December 31, 1972.

Mr. Hohman agreed to the offer of sale on May 19, 1972 and paid the sum of $20,000 to Joseph Bucheit and Sons Company. Subsequently in September 1972, Mr. Hohman paid over to Joseph Bucheit and Sons Company the additional sum of $70,000. Also, some equipment owned by Campbell was transferred to Joseph Bucheit and Sons Company. There were other various credits and transfers.

This cause arose out of the $70,000 payment. This money was borrowed from the Cortland Savings and Banking Company (Cortland). Mr. Hohman met with Mr. Platt of the bank and told him that he needed the money so that he could buy the stock of Campbell. He told Mr. Platt that he was President of Campbell; however, no meeting of the Board of Directors of Campbell had been called or held to elect Mr. Hohman or his wife, to any office in the corporation, and prior to his going to the bank, there had been no action by the board of directors authorizing Mr. Hohman to obligate Campbell in any way.

As security for the loan of $75,000, Mr. Hohman and his wife, Mary Lou Hohman, executed a demand note in favor of Cortland. Each of them signed the note "as an individual." Mr. Hohman signed also as "president" and Mrs. Hohman signed as "treasurer." On the executed note there was no indication in what entity these offices were held. After execution, someone typed above the signatures the name "Campbell Construction, Inc." Mr. Hohman had no idea who had done this or when it had been done.

Mr. Platt, an officer of Cortland, testified that the name of the corporation had been added to the note, after execution, and without notice to the Hohmans. Mr. Platt also testified that the Hohmans had presented no corporate resolutions authorizing them to borrow money in behalf of the corporation: "They signed one of ours."

The resolution or a copy thereof could not be produced at trial. Mr. Platt admitted that the account which had been set up within the bank to apply to the Hohman note was carried as a liability owed by "Robert J. Hohman." Periodic payments on the note were made by Mr. Hohman from September 22, 1972 to May 24, 1975. The money was withdrawn by

him from the corporation and was carried as "an indebtedness I had to the company."

On August 30, 1975, due to the continued delinquency in the loan, Cortland removed $40,203.92 from the checking account of Campbell and satisfied the balance due on the note. Mr. Bucheit, of Joseph Bucheit and Sons Company, found out about the seizure of the money late in the year 1975. Mr. Bucheit considered himself to be President of Campbell and a member of the board of directors. He had been elected to these offices on February 10, 1970 and from that time forward he had not been replaced.

In further support of this position, the plaintiff-appellee, Julius A. Zlotnick, trustee in bankruptcy for Campbell in its action against Cortland and the Hohmans, presented plaintiff's exhibit 3 to Mr. Bucheit. This was identified as a note evidencing a loan from the Union Savings & Trust Co., Warren, Ohio. The note was executed on July 29, 1974 by Campbell. The note also bore the signature of B. J. Bucheit, Jr. under the caption "Campbell Construction, Inc." and the signature of Robert Hohman with the designation "general manager" following Mr. Hohman's signature. When he became aware of the seizure of the bank account in 1975, Mr. Bucheit notified the Insurance Company of North America (INA), which carried a fidelity policy on Campbell, one of the coverages being "employee dishonesty." Before any resolution of the insurance matter, Campbell filed bankruptcy.

A petition in voluntary bankruptcy was filed in behalf of Campbell on June 16, 1977. Attorney Julius A. Zlotnick was appointed the trustee for such bankruptcy. When he became aware of the proceedings involving Mr. Hohman and Cortland, he filed a proof of loss with INA. In this proof, it was alleged that Mr. Hohman, without authority, had incurred the loss which Campbell had suffered. The claim was denied. Trustee Zlotnick filed a complaint in the Mahoning County Court of Common Pleas. As defendants, he named and served Robert J. Hohman and Mary Lou Hohman (Trumbull County), Cortland (Trumbull County) and INA (Mahoning County). Cortland moved to dismiss INA as a party-defendant and to transfer the case to the Court of Common Pleas, Trumbull County, Ohio. This motion was overruled by the court.

The cause came on for trial to the court. At the close of the plaintiff's case, INA was dismissed as a party-defendant. Following submission, the court found for the plaintiff and against Cortland in the amount of $40,203.92.

Assignment of error No. I argues that the trial court erred in overruling Cortland's motion for dismissal on the ground that the trustee's claim was barred by R.C. 2305.09. Specifically, this statute, in paragraphs (B) and (D), provides four-year limitations:

"An action for any of the following causes shall be brought within four years after the cause thereof accrued:

"(A)   For trespassing upon real property;

"(B)   For the recovery of personal property, or for taking or detaining it;

"(C)   For relief on the ground of fraud;

"(D)   For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code.

"If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor if it is for fraud, until the fraud is discovered."

This statute would apply if the cause of action as it related to appellant had accrued in September 1972, but it did not accrue until September 1975 when the appellant seized the corporate bank account.

Assignment of error No. I is overruled.

Assignment of error No. II contends that the court erred "* * * in finding, contrary to R.C. 1701.13(H) that the plaintiff trustee in bankruptcy could assert lack of authority of a corporation and could sue to set aside a claimed illegal or ultra vires act." Cortland states that this is a two-fold problem: "(a) Who has the right to assert a claim to set aside an unauthorized act by corporation officers or directors; and (b) On whose behalf can a Trustee in Bankruptcy act?"

R.C. 1701.13(H) reads as follows:

"No lack of, or limitation upon, the authority of a corporation shall be asserted in any action except (1) by the state in an action by it against the corporation, (2) by or on behalf of the corporation against a director, an officer, or any shareholder as such, (3) by a shareholder as such or by or on behalf of the holders of shares of any class against the corporation, a director, an officer, or any shareholder as such, or (4) in an action involving an alleged overissue of shares. This division shall apply to any action brought in this state upon any contract made in this state by a foreign corporation."

Cortland states that the trustee stands in the shoes of the bankrupt corporation. There can be no argument with this assertion. Cortland argues further that as such successor, the trustee is subject to the same defenses as if the action were commenced by the bankrupt corporation. We agree with this contention. Cortland also argues that any action by the corporation against an alleged ultra vires act of an officer would be barred under the four year statute of limitations (R.C. 2305.09[B] and [D]). Such an argument would be applicable but only under different facts. The borrower in this case was not an officer of the corporation when he negotiated the loan. Furthermore, in this case, there was no conversion of corporate property or any injury to the rights of the corporation when the loan was negotiated September 9, 1972,

but such a cause of action arose when Cortland charged the checking account of the corporation September 29, 1975. The date of this setoff was within four years of the commencement of this action.

Cortland argues, also, that under the avoiding powers of the trustee, the trustee was precluded from acting. In his basic standing as a successor to the bankrupt corporation, a trustee may find himself in a relatively weak position, since he cannot avoid conveyances which are good as against the bankrupt but which conveyances, having been made on the eve of bankruptcy, might have dissipated the bankrupt's assets.

"* * * the Bankruptcy Act expressly avoids certain transfers as preferential or fraudulent, notwithstanding they are valid as to the bankrupt * * *." 9 American Jurisprudence 2d 760, Bankruptcy, Section 1014.

Upon the evidence there was no transfer of any kind by the corporation to Cortland. This action by the trustee was not to avoid a transfer; the whole evidentiary gist of this action was that there had not been a transfer by the corporation.

This third assignment of error argues that the corporation was a co-maker to the note signed by Mr. and Mrs. Hohman and that Cortland had a right to set off the checking account of the corporation when the loan became delinquent. When Mr. Hohman went to the bank to borrow the money, he was not an officer of the corporation. He knew this. He testified that there had been no election of either a board of directors or of officers. He also testified that in order to buy Campbell, "I took a note at the Cortland Savings and Trust." Mr. Hohman told an officer of the bank "that the purpose of borrowing that money was so I could buy the stock of Campbell Construction. * * * [W]e had a clear understanding that I was going to buy Campbell Construction, Inc. * * *"

Mr. Hohman had no shares of stock in his name when he went to Cortland. He was not aware of any resolution authoriz-

ing him to commit the corporation to the loan. The bank officer, Mr. Platt, knew that Mr. Hohman was borrowing the money to purchase the stock of Campbell. The Hohmans presented no corporate resolution to Mr. Platt so he had them sign "one of ours." Neither the original nor a copy of this resolution could be produced at trial. Mr. Platt also admitted that "Campbell Construction, Inc." was typed "over" the Hohmans' signatures after they had signed that note. The Hohmans were not advised of this addition because "they already knew what they were signing."

The trier of the facts could properly conclude that the Hohmans had no authority to incur any liability on the part of the corporation and Cortland had no reason to believe nor rely upon any alleged authority. By law Campbell incurred no liability to Cortland and Cortland had no authority to offset Campbell's bank account. In some instances there might be a justifiable presumption that a corporate officer has authority to borrow money in behalf of the corporation, but there must be some evidence by way of a course of dealing to support such a presumption.

The fourth assignment of error argues venue. This case was filed in Mahoning County Court of Common Pleas. Of the four defendants, three were located in Trumbull County, Ohio; one, INA, was located in Mahoning County, Ohio.

Civ. R. 3 states, in pertinent part, as follows:

"(A) Commencement. A civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing.

"* * *

"(E) Venue: Multiple defendants and multiple claims for relief. In any action, brought by one or more plaintiffs against one or more defendants involving one or more claims for relief, the forum shall be deemed a proper forum, and venue therein shall be proper, if the venue is proper as to any one party other than a nominal party, or as to any one claim for relief.

"Neither the dismissal of any claim nor of any party except an indispensable party shall affect the jurisdiction of the court over the remaining parties."

INA was dismissed as a party at the close of plaintiff's case and upon the merits that arose from the evidence. The trial court concluded that the insurance contract did not cover the acts of Robert Hohman in the absence of fraud.

Based upon our review of the evidence and conclusions set forth in disposition of previous assignments of error, Assignment of error No. IV is found to be without merit.

Judgment of the trial court is affirmed.

*Judgment affirmed.*

Lynch, P.J., and Donofrio, J., concur.